**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMIE SKINNER,<br><br>    Plaintiff,<br><br> v.<br><br>GREEN TREE SERVICING LLC,<br><br>    Defendant. | Case No.: 3:12-cv-03834-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [Dkt. No. 25].** |

## I. INTRODUCTION

Plaintiff alleges that various phone calls from Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, and the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code §§ 1788 *et seq.*, which prohibit debt collectors from engaging in abusive, deceptive and unfair debt collection practices. Defendant brings a Motion to Dismiss Plaintiff's First Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("the Motion"). The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). The Motion came on for hearing December 14, 2012, at 9:30a.m. For the reasons stated below, the Motion is GRANTED in part and DENIED in part.

## II. BACKGROUND

### A. Factual Allegations

Plaintiff Jamie Skinner is a resident of Contra Costa, California. First Amended Compliant ("FAC") ¶ 9. On November 2, 2005, Plaintiff executed a promissory note in the amount of $408,000 in favor of CMG Mortgage Services, Inc. ("CMG") secured by a Deed of Trust to the property located at 3031 Mills Drive, Brentwood, California 94513. Defendant Green

Tree's Request for Judicial Notice in Support of its Motion to Dismiss Plaintiff's Complaint ("RJN") [1], Exh. A; *see also* FAC ¶ 17. That same day, Plaintiff executed a junior-priority promissory note in the amount of $102,000, which was also in favor of CMG and also secured by a Deed of Trust and Assignment of Rents to the same property. RJN, Exh. B; *see also* FAC ¶ 17. This second loan is the only loan relevant to this action and will hereafter be referred to as "the loan." On February 2, 2012, the property was sold through a nonjudicial foreclosure. RJN, Exh. C; FAC ¶ 18.

After the foreclosure, Plaintiff received a letter informing her that Green Tree Servicing LLC ("Green Tree") acquired the rights to the loan. *See* FAC ¶ 18. Plaintiff alleges that she used the loan to purchase the property which underwent foreclosure, and therefore, she is not personally liable for the loan under California Code of Civil Procedure § 580b. FAC ¶¶ 17-18. Section 580b provides that "[n]o deficiency judgment shall lie" against a purchase money loan after foreclosure.[2] Cal. Civ. Proc. Code § 580b.

On March 1, 2012, Plaintiff received a letter from Green Tree informing Plaintiff that she owed $102,000 immediately because the amount due on the loan accelerated after default. *Id*. After receiving this letter, Plaintiff received a series of phone calls from Green Tree. The first phone call was between Plaintiff and a woman from Green Tree named Corina. *Id.* ¶ 19. After

---

[1] Defendants submitted the Request for Judicial Notice with the first motion to dismiss Plaintiff's original complaint. *See* Dkt. No. 14. Under Rule 201(b) of the Federal Rules of Evidence, "a court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citing *Mack v. South Bay Beer Distrib.,* 798 F.2d 1279, 1282 (9th Cir.1986)). Because the documents submitted with Defendant's Request for Judicial Notice are publically-recorded Deeds of Trust and other publically-recorded documents, the Court grants Defendant's Request for Judicial Notice. *See id.*

[2] The text of section 580b states, in relevant part: "No deficiency judgment shall lie in any event after a sale of real property or an estate for years therein for failure of the purchaser to complete his or her contract of sale, or under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property or estate for years therein, or under a deed of trust or mortgage on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of that dwelling occupied, entirely or in part, by the purchaser." Cal. Civ. Proc. Code § 580b.

United States District Court
Northern District of California

Plaintiff informed Corina that the loan was a purchase money loan under which she was not personally liable, "Corina agreed, but told Plaintiff it would still affect their credit unless Plaintiff settled by paying an agreed amount." *Id*. Plaintiff received three more phone calls the morning of April 14, 2012. *Id.* Plaintiff did not answer the first call, the "phone hung up" on the second call, and the third call was a recording from Green Tree telling Plaintiff to call back. *Id.*

On the morning of April 16, 2012, Plaintiff received another call from Green Tree. Plaintiff interrupted the man to tell him that the loan was a purchase money loan and the house had foreclosed. *Id*. Plaintiff "[t]old him not to call us anymore and that I had already stated that we were talking with our lawyer." *Id*. Plaintiff alleges that the man "became very abrupt and said 'Well thank you for commanding the conversation like that but we do not sit around and wait for you to contact us.'" *Id*.

On the morning of April 18, 2012, Plaintiff received another phone call from man who worked for Green Tree. *Id.* This man, presumably named Gary Rose, told Plaintiff she still owed $102,000 and "proceeded to bully" her. *Id*. Plaintiff alleges the following in her First Amended Compliant regarding the April 18th phone call:

> [He said] I stole this money from Countrywide and now they have a blank spot in their bank account while we are living free! He said how can you be an American and know that you are stealing this money …
>
> He proceeded to tell me "wouldn't it be nice for everyone to just say they have a lawyer and things will go away, but somebody, YOU still need to pay your debt!"
>
> He then also told me, that I felt like I knew more than him and I was choosing the wrong decision to go up against BofA and that they will do everything in their power to come after us to get all their money back.
>
> He said they will contact my husband's employer to verify that he is still working and look into me if I am working because they can garnish our wages to pay back the debt.
>
> (By this point my heart is pounding and I can feel my blood pressure going thru [sic] the roof!) I felt many times that he attacked my character and ability to 'do the right thing'!
>
> He then stated that I am denying the offer to settle at a lower amount and that at this point BofA will do everything to get their money and after the phone hangs up I will no longer have the offer to settle at a lower payoff.

*Id.* (paragraphs inserted for ease of reading).

3

1 Plaintiff alleges the foregoing acts "constitute numerous and multiple violations" of the
2 FDCPA and the Rosenthal Act. Plaintiff alleges the loan constitutes "debt" as defined under the
3 FDCPA. *Id.* ¶ 20. Plaintiff alleges that she is a "consumer" as defined by the FDCPA and a
4 "debtor," as defined under the Rosenthal Act. *Id.* ¶¶ 9-10. Plaintiff further alleges that Green
5 Tree is a "debt collector" as defined by the FDCPA and Rosenthal Act, *see id.* ¶¶ 12-13, which is
6 evidenced by Green Tree's first letter to Plaintiff wherein Green Tree "admitted, in writing, that it
7 was a debt collector," *id.* ¶ 18. Plaintiff asserts violations of the FDCPA, "including but not
8 limited to §§ 1692d, 1692d(2), 1692e, 1692e(2), 1692e(7), 1692e(10), and 1692f[,]" *id.* ¶ 22, and
9 violations of the Rosenthal Act, "including 1788.11(a) and 1788.17," *id.* ¶ 25. Plaintiff requests
10 actual damages, statutory damages, and reasonable attorneys' fees and costs. *Id.* ¶¶ 23, 26.

11 **B.    Motion to Dismiss**

12 On October 26, 2012, Defendant filed the instant Motion to Dismiss Plaintiff's First
13 Amended Complaint. Dkt. No. 25 (Motion to Dismiss Plaintiff's First Amended Complaint)
14 ("Motion"). Defendant first argues the First Amended Complaint should be dismissed because
15 Plaintiff's allegation that Defendant violated California's anti-deficiency statute cannot, standing
16 alone, give rise to a claim for unfair debt collection practices. Defendant cites *Herrera v. LCS*
17 *Fin. Servs. Corp.*, No. 09-2843, 2009 WL 2912517 (N.D. Cal. Sept. 9, 2009), where a court from
18 this district considered whether California Code of Civil Procedure § 580b obliterated the
19 existence of a debt, because if so, the debt collector would have been liable under FDCPA for
20 misrepresenting the debt's existence when the debt collector contacted the plaintiff. The *Herrera*
21 court held:

22 > Section 580b, by its own terms, eliminates a creditor's ability to seek a deficiency
> judgment, but it does not eliminate the underlying debt. The fact of that debt's
23 > existence may be entirely theoretical, given that section 580b closes the courthouse
> door on any creditor's collection efforts against the mortgagor. However, the
24 > claim that section 580b erases the debt, barring [the debt collector] from seeking
25 > payment in any manner, must fail as a matter of law.

26 *See id.* at *8. Defendant argues that under the reasoning of *Herrera*, Defendant was not barred
27 from contacting Plaintiff and encouraging her to pay her debt because the debt was still in
28 existence.

4

1   In Plaintiff's Opposition to Defendant's Motion to Dismiss, Plaintiff concedes that
2   Defendant was entitled to request payment on the debt despite the applicability of section 580b,
3   and contends that "Plaintiff did not sue because Defendant simply requested payment." Dkt. No.
4   21 (Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended
5   Complaint) ("Opp.") at 3. Rather, Plaintiff contends that Defendant's manner in attempting to
6   collect the debt violates the FDCPA and the Rosenthal Act. *Id*. at 3-4. Because the parties agree
7   that *if* section 580b applies to Plaintiff's loan, Defendant would not be barred from merely
8   contacting Plaintiff in an attempt to collect the debt, this is no longer a disputed issue and will not
9   be addressed by the Court.

10  Defendant next argues the First Amended Complaint should be dismissed because the
11  alleged communications between Plaintiff and Green Tree are not the type of behavior prohibited
12  by the FDCPA and the Rosenthal Act. Without specifically referencing Plaintiff's allegations,
13  Defendant argues Green Tree enjoys a "qualified economic privilege" to protect its economic
14  interests. Motion at 5-7. Defendant cites two California state cases to argue that the "privilege
15  may be lost if the creditor uses outrageous and unreasonable means in seeking repayment," *see*
16  Opp. at 6 (quoting *Symonds v. Mercury Savings & Loan Ass'n*, 225 Cal.App.3d 1458, 1468
17  (1990)), and that the "applicable test is whether or not the creditor goes beyond *all reasonable*
18  *bounds of decency* in attempting to collect the debt," *see* Opp. at 6 (quoting *Bundren v. Superior*
19  *Court*, 145 Cal.App.3d 784, 789 (1983)). Plaintiff notes that neither case which Defendant cites
20  involve claims for violations of the FDCPA or the Rosenthal Act. Rather, the *Symonds* and
21  *Bundren* courts articulated legal principles in the context of claims for intentional infliction of
22  emotional distress. Opp. at 4-5. Further, Plaintiff argues that "there exists no privilege which
23  permits a debt collector to call borrowers un-American thieves." Opp. at 4.

24  As a final point in Defendant's Motion, Defendant argues the First Amended Complaint
25  "cannot withstand the pleading stage" because Plaintiff "has not adequately pled the elements
26  necessary to recover actual damages." Motion at 7-8. Defendant contends that in order to
27  recover actual damages, a plaintiff must plead the elements of a claim for intentional infliction of
28  emotional distress. *Id*. (citing *Costa v. Nat'l Action Fin. Servs.*, 634 F.Supp.2d 1069, 1078 (E.D.

1 Cal. 2007)). In response, Plaintiff contends she is not required to plead the elements of a claim
2 for intentional infliction of emotional distress when her claims are for violations of the FDCPA
3 and Rosenthal Act. Plaintiff contends that Defendant's argument against the computation of
4 actual damages is premature, and argues that "[e]ven if this Court were to find that Plaintiff is not
5 entitled to all of the relief requested, Defendant would still not be entitled to an order of dismissal
6 of this action." Opp. at 8.

7 In the Reply, Defendant makes more specific arguments relating to Plaintiff's claims in
8 the First Amended Complaint. Dkt. No. 34 (Reply in Support of Defendant Green Tree's Motion
9 to Dismiss First Amended Complaint) ("Reply"). Defendant argues Plaintiff states no claim for
10 relief under section 1692d, which prohibits debt collectors from engaging "in any conduct the
11 natural consequence of which is to harass, oppress, or abuse any person," *see* § 1692d, because
12 the First Amended Complaint "describes fairly typical debt collection conversations, with
13 gradually increasing levels of pressure as Skinner continued to refuse to pay her debt." Reply at
14 4. Next, Defendant contends Plaintiff states no claim for relief under section 1692e, which
15 prohibits debt collectors from using any "false, deceptive, or misleading representation or means,"
16 *see* § 1692e, because Green Tree did not threaten to take illegal action or falsely represent the
17 legal status of the debt because Green Tree may in fact be able to recover the debt through
18 judicial action. Reply at 6-7. Finally, Defendant argues Plaintiff states no claim for relief under
19 section 1692f, which forbids "unfair or unconscionable means to collect or attempt to collect any
20 debt," *see* § 1692f, because Plaintiff fails to allege any facts which would give rise to a cause of
21 action under section 1692f.

22 **III. LEGAL STANDARD**

23 A complaint may be dismissed for failure to state a claim for which relief can be granted
24 under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 12(b)(6). "The
25 purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the
26 complaint." *N.Star. Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). In ruling on
27 a motion to dismiss under Rule 12(b)(6), the Court takes "all allegations of material fact as true
28

6

and contrue(s) them in the lights most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1990).

Generally, the plaintiff's burden at the pleading stage is relatively light. Rule 8(a) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The complaint need not contain "detailed factual allegations," but must allege facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). The factual allegations must be definite enough to "raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545. "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663.

## IV. DISCUSSION

The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). An aggrieved party may thus recover actual damages, statutory damages, and seek an award of attorney's fees and costs where the provisions of the FDCPA have been violated. 15 U.S.C. § 1692k(a).

The Rosenthal Act is California's counterpart to the FDCPA and incorporates its salient provisions. *See* Cal. Civ. Code § 1788.17. Plaintiff's only separate claim under the Rosenthal Act is that Defendant violated California Civil Code § 1788.11(a). This claim is the same as Plaintiff's section 1692d claim because they both prohibit use of "obscene and profane language." *See* 15 U.S.C. § 1692d(2); Cal. Civ. Code § 1788.11(a). Therefore, the Court does not undergo a separate analysis for the Rosenthal Act claim.

### A. Defendant's Arguments in the Opening Brief

Before considering the issue presently before the Court--whether Plaintiff has adequately stated a claim for relief under the FDCPA and Rosenthal Act--the Court addresses Defendant's

meritless arguments from the Opening Brief. First, Defendant has provided *no* legal support for the contention that Green Tree enjoys "qualified economic privilege." Defendant cites two California state cases which discuss qualified economic privilege in the context of claims for intentional infliction of emotional distress ("IIED"), not FDCPA or Rosenthal Act claims. *See Bundren*, 145 Cal.App.3d at 789; *Symonds*, 225 Cal.App.3d at 1468. The *Bundren* and *Symonds* courts sought to balance a creditor's right to demand payments with an individual's right to be free from intentional infliction of emotional distress. *See id*. However, in the context of the FDCPA and Rosenthal Act, Congress and the California Legislature have already struck the appropriate balance of these competing concerns by passing specific legislation which prohibits specific conduct.

In *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507 (9th Cir. 1994), the Ninth Circuit reversed the district court's conclusion that a plaintiff failed to establish a FDCPA claim by failing to demonstrate that the defendant's actions were "unreasonable." *Id*. at 1516. The Ninth Circuit noted that the "reasonableness" of the defendant's actions was an "incorrect standard" because "[t]he FDCPA is not simply a federal codification of common-law negligence." *Id*. ("Rather, each section specifies what kind of conduct supports FDCPA liability"). Here, Defendant is attempting to promote a similar "incorrect standard" by analogizing Plaintiff's FDCPA and Rosenthal Act claims to IIED claims. Contrary to Defendant's contention, however, the "applicable test" for claims arising under the FDCPA or Rosenthal Act is *not* "whether or not the creditor goes beyond *all reasonable bounds of decency* in attempting to collect the debt." Opp. at 6 (citing *Bundren*, 145 Cal.App.3d at 789). That is the test for an IIED claim, *see Bundren*, 145 Cal.App.3d at 789, and will not be entertained here.

Defendant's next argument is similarly unavailing. Defendant contends the First Amended Complaint "cannot withstand the pleading stage" because Plaintiff has not adequately pled the elements of an IIED claim. Opp. at 8. Defendant cites cases in which some courts required the plaintiff to satisfy the elements of an IIED claim in order to recover "actual

damages" for emotional distress under the FDCPA and/or Rosenthal Act.[3] *See, e.g.*, *Costa v. Nat'l Action Fin. Servs.*, 634 F.Supp.2d 1069, 1078 (E.D. Cal. 2007) ("*Costa*"). However, Defendant's sweeping argument fails for two reasons. First, Defendant cites no case in which a plaintiff was required to *plead* the IIED elements in order to survive dismissal. Rather, this principle is only applied when the plaintiff must actually prove her damages. *See, e.g.*, *Costa*, 634 F.Supp.2d at 1007 (decided at the summary judgment stage); *Venes v. Prof'l Serv. Bureau, Inc.*, 353 N.W.2d 671, 674 (Minn. Ct. App. 1984) (IIED elements written into the jury instructions). Second, recovery of "actual damages" under the FDCPA or Rosenthal Act is not limited to damages for emotional distress. A plaintiff, for example, may recover "actual damages" when a debt collector causes the termination of a plaintiff's employment, and clearly such a plaintiff would not be required to plead the elements of an IIED claim.

As discussed above, Defendant made specific arguments relating to Plaintiff's claims in the Reply, which will now be considered in the context of Plaintiff's specific claims.

### B. Plaintiff's Claims for Relief

#### 1. Section 1692d

Section 1692d proscribes debt collectors from engaging "in conduct the natural consequence of which is to harass, oppress, or abuse any person[.]" 15 U.S.C. § 1692d. Section 1692d contains a nonexhaustive list of specific conduct which constitutes a violation of the section, such as the "use or threat of use of violence or other criminal means to harm the physical person, reputation, or property," § 1692d(1), the "use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader," § 1692d(2), or "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person," § 1692d(5).

The Eleventh Circuit has stated that "claims under § 1692d should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to

---

[3] Other courts have not demanded such a high standard. *See Costa*, 634 F.Supp.2d at 1078 ("District courts are split over whether a plaintiff's claims for emotional distress damages under the FDCPA are evaluated under the state law governing the tort of IIED or some lower standard.").

9

1 harassment, oppression, or abuse." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir.
2 1985); *see also Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010) (the Ninth
3 Circuit has stated that 'the lease sophisticated debtor' standard applies section 1692d). The
4 Eleventh Circuit analogized this principle to the "least sophisticated consumer" standard courts
5 apply to sections 1692e and 1692f, but noted how the concept is more nuanced in section 1962d
6 because even the most sophisticated consumer will be more susceptible to harassment or abuse if
7 he or she "is poor (*i.e.,* has limited access to the legal system), is on probation, or is otherwise at
8 the mercy of a power relationship." *Id*.

9 There is no bright-line rule establishing which conduct constitutes harassment or abuse
10 under section 1692d, but it is clear that some "conduct fails to establish harassment as a matter of
11 law." *Artega v. Asset Acceptance*, LLC, 733 F.Supp.2d 1218, 1227 (E.D. Cal. 2010). In *Artega*,
12 a district court from the Eastern District of California collected various cases and articulated
13 general guidelines as to what types of conduct fall within the scope of section 1692d. *See id*. at
14 1227-29. The court stated that a debt collector may be liable for "immediately re-calling a debtor
15 after a debtor has hung up the telephone[,]" or for "continuing to call the debtor after the debtor
16 has requested that the debt collector cease and desist communication[,]" or for "calling a debtor
17 outside of his or her home--by calling the debtor's workplace or the homes of a debtor's family
18 and friends--or calling at inconvenient hours[.]" *Id.* at 1227-28. By contrast, a debt collector's
19 "single laugh" during a phone call initiated by the debtor, a statement that repayment was
20 "urgent" and "time sensitive," or telling the debtor they "were going to get their money one way
21 or another, yelling that Georgia was a garnishable state, then hanging up," has been found to not
22 violate section 1692d as a matter of law. *Id.* at 1228-29.

23 The Ninth Circuit's most substantive analysis with regard to section 1692d, albeit brief,
24 was in *Fox v. Citicorp Credit Services, Inc*., 15 F.3d 1507 (9th Cir. 1994) ("*Fox*"). The district
25 court had granted summary judgment in favor of a debt collector on grounds that the plaintiff had
26 failed to show the debt collector's actions were unreasonable. *Id*. at 1516. The Ninth Circuit
27 reversed, holding that "[t]hreatening and intimidating calls to a consumer at an inconvenient time
28 or place could rationally support a jury finding of harassing conduct." *Id*. The plaintiff in *Fox*

10

had testified that the debt collector's phone calls were "intimidating and threatening," that the debt collector threatened to garnish the plaintiff's wages and demanded overnight payments, and that the debt collector called the plaintiff at work after she requested to not be called there on two previous occasions. *Id.*

Assuming Plaintiff's allegations to be true, the Court finds that Plaintiff has stated a claim for relief under section 1692d. Two days after Plaintiff requested that Green Tree not call anymore, a debt collector from Green Tree called Plaintiff and "proceeded to bully" her. FAC ¶ 19; *see Fox*, 15 F.3d at 1516 (the debt collector called the plaintiff at work after being told not to call there, and those calls were "[t]hreatening and intimidating"). Plaintiff also alleges that the debt collector said Plaintiff "was choosing the wrong decision to go up against BofA," and further alleges that the debt collector "said they will contact [Plaintiff's] husband's employer… because they can garnish … wages to pay back the debt." FAC ¶ 19; *see Fox*, 15 F.3d at 1516 (the debt collector threatened to garnish the plaintiff's wages).

Plaintiff's allegations also specify that Defendant violated 1692d(2), which prohibits the use of "obscene or profane language." *See* FAC ¶ 22. Plaintiff alleges that the debt collector accused her of stealing the money, and asked her how she could "be an American" while knowing that she stole this money. *Id.* While being called a thief and un-American is not "obscene or profane language" *per se*, section 1692d(2) also prohibits other "language the natural consequence of which is to abuse the hearer[.]" 15 U.S.C. § 1692d(2); *see also Jeter*, 760 F.2d at 1178 ("subsection (2) was meant to deter offensive language which is at least akin to profanity or obscenity. Such offensive language might encompass name-calling, racial or ethnic slurs, and other derogatory remarks which are similar in their offensiveness to obscene or profane remarks."). The Court finds the foregoing allegations sufficient to survive Defendant's Motion to Dismiss on Plaintiff's section 1692d claim.

### 2. Section 1692e

Section 1692e prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Courts consider section 1692e claims under the "least sophisticated consumer" standard.

11

*Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222 (9th Cir. 1988). In order to determine whether conduct violates section 1692e, courts must undergo "an objective analysis that takes into account whether 'the least sophisticated debtor would likely be misled by a communication.'" *Donohue*, 592 F.3d at 1030 (citing *Guerrero v. RJM Acquisitions LLC,* 499 F.3d 926, 934 (9th Cir. 2007)). Like the other sections of the FDCPA, section 1692e contains subsections which describe specific conduct which is in violation of the section.

Two of Plaintiff's allegations fit well within the scope of section 1692e. First, Plaintiff alleges that one of Green Tree's personnel accused her of "stealing." FAC ¶ 19. Under subsection (7), a debt collector violates section 1692e by falsely representing or implying "that the consumer committed any crime or other conduct in order to disgrace the consumer." 15 U.S.C. § 1692e(7). Second, Plaintiff alleges that Green Tree threatened to contact Plaintiff's husband's employer and stated that Green Tree can garnish his wages. FAC ¶ 19. Under subsection (4), a debt collector violates section 1692e by representing or implying that nonpayment will result in "garnishment" of "wages of any person unless such action is lawful and the debt collector or creditor intends to take such action."[4] 15 U.S.C. § 1692e(4). Reading the allegations in the light most favorable to Plaintiff, the allegations imply that Defendant did not intend to garnish the wages because such garnishment would have been unlawful. *See id*. Therefore, the Court finds that Plaintiff has sufficiently pled a claim for relief under section 1692e.

Plaintiff's other allegations may provide a further basis for Green Tree's liability under section 1692e. Subsection (2)(A) of section 1692e prohibits debt collectors from falsely representing the "legal status" of a debt. 15 U.S.C. § 1692e(2)(A); *see also* 15 U.S.C. § 1692e(10) (a debt collector cannot use "false representation or deceptive means to collect or attempt to collect any debt"). Plaintiff alleges that Green Tree personnel stated "they will do

---

[4] The fact that Plaintiff did not specifically allege a violation of subsection (4) of section 1692e is immaterial. The subsections of each section are not separate causes of action. Rather, the subsections provide a nonexhaustive list of examples which violate the section. *See* 15 U.S.C. § 1692e ("Without limiting the general application of the foregoing, *the following conduct is a violation of <u>this section</u>*") (emphasis added).

12

1 everything in their power to come after [Plaintiff and her husband] to get all their money back[.]"
2 FAC ¶ 19. This statement may have misrepresented the "legal status" of Plaintiff's debt if
3 Defendant in fact had no further "power" than to request that Plaintiff pay the debt voluntarily.
4 Whether this was a misrepresentation of the debt's "legal status" turns on whether Plaintiff's debt
5 is protected by California Code of Civil Procedure § 580b, which "closes the courthouse door on
6 any creditor's collection efforts against the mortgagor." *Herrera*, 2009 WL 2912517, *8; Cal.
7 Code Civ. Proc. § 580b. This question requires, at the very least, proof that Plaintiff's loan was a
8 purchase money loan, and therefore cannot be answered until the Court can consider evidence.
9 For purposes of Defendant's Motion to Dismiss, however, the Court finds that Plaintiff's
10 allegations are sufficient.[5]

### 3. Section 1692f

Section 1692f proscribes debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Like section 1692e, determining whether conduct violates section 1692f "requires an objective analysis that takes into account whether 'the least sophisticated debtor would likely be misled by a communication.'" *Donohue*, 592 F.3d at 1030 (citing *Guerrero*, 499 F.3d at 934). Moreover, as with the other FDCPA sections, section 1692f provides a nonexhaustive list of examples of "unfair or unconscionable means to collect or attempt to collect any debt." *See id.* For instance, a debt collector violates section 1692f by collecting more than what is owed by contract (§ 1692f(1)), by accepting, soliciting or depositing a postdated check (§ 1692f(2)-(4)), by charging a debtor for communications (*i.e.* collect calls) by concealing the true purpose of the communication (§ 1692f(5)), by threatening to take nonjudicial action to effect dispossession or disablement of property (§ 1692f(6)), by communicating with the debtor via post card (§ 1692f(7)), or by using any language or symbol other than the debt collector's address on an envelope (§ 1692f(8)).

Here, Plaintiff does not allege that Green Tree attempted to collect more than the amount of her debt or that Green Tree engaged in any other "unfair or unconscionable" conduct as

---

[5] The Court does not decide at this time whether Plaintiff's loan fits within the scope of California Code of Civil Procedure § 580b because that question is not necessary for purposes of this Motion.

13

1  described section 1692f's other subsections. Although the subsections provide a nonexhaustive
2  list of examples, these examples are instructive as to the type of conduct which violates section
3  1692f. Plaintiff does not allege any facts which come close to the conduct prohibited by section
4  1692f. This case is not like *Fox* in this regard, where the Ninth Circuit reversed the district
5  court's grant of summary judgment on the section 1692f claim because "a jury could rationally
6  find the filing of an application for a writ of garnishment when the Foxes were current in
7  payments … to constitute an unfair or unconscionable means of collection or attempted
8  collection." *Fox*, 15 F.3d at 1517. Plaintiff's First Amended Complaint only includes a
9  conclusory allegation that Green Tree's actions were "unfair and unconscionable," but such an
10 allegation does not pass Rule 8(a) muster. *See Iqbal*, 556 U.S. at 663 ("the tenet that a court must
11 accept a complaint's allegations as true is inapplicable to … mere conclusory statements").
12 Therefore, Plaintiff's section 1692f claim is dismissed without prejudice.

### V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's First Amended Complaint is DENIED as to Plaintiff's §§ 1692d and 1692e claims, and GRANTED as to Plaintiff's § 1692f claim. The § 1692f claim is dismissed with leave to amend. If Plaintiff chooses to amend the complaint, she must file an amended complaint within thirty (30) days of the date of this Order.

IT IS SO ORDERED.

Dated: December 14, 2012

Joseph C. Spero
United States Magistrate Judge